UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
IRIS LETTERA, et al.,

                              Plaintiffs,                    **MEMORANDUM
AND ORDER**

   - against -

                                                                 CV 04-4955 (JO)

THE RETAIL PROPERTY TRUST,

                              Defendant.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

On April 6, 2004, plaintiffs Iris and Frank Lettera (the "Letteras") were at the Walt Whitman Mall in Huntington, New York (the "mall"), which property is owned by defendant The Retail Property Trust ("RPT"). Mrs. Lettera tripped and fell on a ramp in the mall's parking lot and sustained various injuries. She sued RPT on the ground that the ramp was defective and dangerous. *See* Docket Entry ("DE") 1 ("Complaint") ¶ 16. As revealed through the discovery process, the Letteras' claim of negligence is grounded on an assertion that RPT was negligent in failing to ensure that the ramp's condition complied with certain provisions of the Americans with Disabilities Act (the "ADA") and the American National Standards Institute Code ("ANSI") as purportedly required by the Town Code of the Town of Huntington. Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 In Support of Defendant's Motion For Summary Judgment ("Stmt.") ¶¶ 9-11. RPT asserts that the ramp's non-compliance with the ADA and ANSI, even if assumed, cannot support a cause of action sounding in negligence, and that the Letteras' complaint must therefore be dismissed. For the reasons explained below, I agree and therefore grant summary judgment in favor of RPT and against the Letteras.

I.  Background

The Letteras filed their complaint on November 15, 2004.  DE 1.  In it, they asserted without elaboration that the Mall's parking area "was dangerous and defective and constituted a trap-like condition" and that RPT "had actual and/or constructive notice" of that condition.  Complaint ¶¶ 16, 17.  During the course of discovery, the Letteras retained an expert and put some flesh on the bone of their negligence claim.  See DE 23 Ex. F ("Engineer's Report of the Lettera Injury By:  Joseph C. Cannizzo, P.E.") ("Report").  Specifically, as the parties set forth in their joint pretrial order, the Letteras claim that the ramp was dangerous and defective because it

> failed to comply with the American [sic] with Disabilities Action [sic] Section 4.7.5, in that guardrails or handrails are required to have been installed atop the curb abutting the sidewalk/ramp.  Additionally, said ramp failed to comply with the American National Standards Institute specifications as required by the New York State Uniform Fire Prevention and Building Code and the Americans with Disabilities Act, as required by the Town of Huntington, in that said ramp must have had flared sides and detectable warnings must have been utilized.  The defective and dangerous condition of said ramp was the proximate cause of plaintiff IRIS LETTERA'S injuries.

DE 17 at 2.  RPT identified a variety of factual and legal defenses to the Letteras' theory of liability, including assertions that the ADA does not apply (in part because the ramp at issue is "not a handicap ramp,") that the ramp's design was compliant with applicable regulations, and that Mrs. Lettera's injuries resulted at least partially from her own negligence.  *Id*.

After the submission of their joint pretrial order, the parties consented to have the case referred to me for all purposes including the entry of judgment.  DE 19.  The Honorable Thomas C. Platt, United States District Judge, approved the referral and the case was reassigned to me.  DE 22.  On October 19, 2005, I scheduled a trial date and granted RPT permission to file a motion for summary judgment.  DE 21.  RPT did so on January 12, 2006.  DE 23.

In seeking summary judgment, RPT argued that the Letteras' theory of liability rests on a flawed view of the law. They noted that the Letteras' "only basis for assessing liability … is that the ramp where Iris Lettera fell was defective because it failed to comply with the ADA, as well as the Building Code and ANSI, as required by the Town Code of the Town of Huntington, and that the above-referenced alleged defects were the proximate cause of … Iris Lettera's injuries." DE 24 (Defendant's Memorandum Of Law In Support Of Motion For An Order Granting Summary Judgment) ("Memo.") at 2. RPT went on to argue that such a theory is fatally flawed because the ADA does not establish a duty of care and because a code violation alone cannot support liability as a matter of law. Memo. at 3-8.

The Letteras initially opposed summary judgment the way most of us "oppose" parking tickets and inclement weather: they plainly expressed their preference against it and complained that its occurrence would be unjust, but they offered no substantive reason that remotely explained why, under the circumstances, it could not or should not happen. They submitted no statement of disputed material facts responsive to the defendants' statement pursuant to Local Civil Rule 56.1. More substantively, their memorandum in opposition did not even acknowledge, let alone refute, RPT's legal arguments about the legal insufficiency of their reliance on the ADA and ANSI. Instead, the Letteras reminded me that summary judgment is "an extreme remedy" that is rarely granted. DE 25 (Plaintiffs' Memorandum In Opposition To Defendant's Motion For Summary Judgment) ("Opp.") at 6. They then went on to insist at some length that the parties are in dispute about a number of factual issues, a point they illustrated primarily by pointing out the extent to which there are differences of opinion between the parties' respective experts. *See* Opp. at 7-11. RPT understandably pointed out the disconnect between the parties' memoranda in its reply. DE 27.

3

At a pretrial conference on January 23, 2006, the plaintiffs' counsel confirmed that there are no facts as such in dispute, but argued that there is a genuine material dispute as to whether the ramp at issue should have complied with the ADA and ANSI and insisted that the latter dispute is not amenable to decision as a matter of law. Instead, counsel urged that the issue requires a jury's determination because it reduces to whether compliance with the standards of the ADA and ANSI is something a reasonable engineer would require, and that such a requirement somehow creates a legal duty for property owners. In light of the fact that the theory just articulated was not addressed in the plaintiffs' memorandum in opposition to summary judgment, I allowed the plaintiffs an additional opportunity to submit a letter citing cases supporting the theory counsel described. DE 29. Counsel did submit a letter that purported to support the theory. DE 30. Because, as discussed below, the letter cited no authority that lent any actual support to the plaintiffs' position, I did not require counsel for RPT to respond, and instead proceeded to the merits on the basis of the record developed to date.

II. Discussion

    A. The Applicable Law

        1. Summary Judgment

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed R. Civ. P. 56(c)). In determining whether to grant summary judgment, a court is confined to issue-finding, not issue-resolution. *Rasmussen v. Sigma Corp. of America*, 27 F. Supp.2d 388, 391 (E.D.N.Y. 1998) (citations omitted). A court does not "'weigh the evidence and resolve the factual issues'"

but instead "'determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried.'" *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Id*. In assessing the evidence, all factual inferences are to be resolved in favor of the non-movant. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999).

    2.  <u>Choice Of Law</u>

  The court's jurisdiction over this case arises from the parties' diversity of citizenship rather than on any claim predicated on federal law. As a result, I look to the choice-of-law rules of the forum state of New York to determine which jurisdiction's substantive law to apply. *HSA Residential Mortgage Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 361-62 (E.D.N.Y. 2003) (citations omitted). I need not engage in such analysis because there appears to be no dispute that the case is controlled by the substantive law of New York, where all the events at issue occurred.

    B.  <u>There Are No Controverted Statements Of Material Fact</u>

  A party opposing a properly filed motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The

5

local rules of this court set forth even more explicitly the burdens assigned to, respectively, a movant seeking summary judgment and a party opposing such relief:

> (a) Upon any motion for summary judgment ... there shall be annexed to the notice of motion a separate, short and concise statement, ***in numbered paragraphs***, of the material facts as to which the moving party contends there is no genuine issue to be tried....
>
> (b) The papers opposing a motion for summary judgment shall include ***a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing*** a separate, short and concise statement of ***additional*** material facts as to which it is contended that there exists a genuine issue to be tried.
>
> (c) ***Each numbered paragraph in the statement of*** material facts set forth in the statement required to be served by the moving party will be deemed to be admitted ***for purposes of the motion*** unless ***specifically*** controverted by ***a correspondingly numbered paragraph in*** the statement required to be served by the opposing party.
>
> (d) Each statement ***by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact,*** must be followed by a citation to evidence would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

Loc. Civ. R. 56.1 (emphasis in original).

RPT has submitted the required statement in support of its motion but the Letteras, in opposition, have neither controverted any of RPT's statements nor cited any "additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b). Indeed, they have submitted no statement at all. Accordingly, for purposes of the instant motion, each numbered paragraph in RPT's statement is deemed admitted. Of greater significance to the instant motion, in the absence of any responsive statement from the Letteras pursuant to Rule 56.1 that raises additional facts that they believe to be in dispute, I must conclude that RPT's statement sets forth all of the facts material to the resolution of this dispute.

As none of those facts is disputed, the Letteras must explain why the defendants are not entitled to summary judgment as a matter of law. This they have entirely failed to do.

        C.        <u>The Plaintiffs Have Identified No Viable Legal Theory Of Liability</u>

Notwithstanding the Letteras' failure to submit a statement pursuant to Local Civil Rule 56.1, my disposition of the instant motion is *not* predicated on a lawyer's failure to adhere to court rules. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.")). Rather, it is evident that the absence of a responsive Rule 56.1 statement from the plaintiffs reflects the underlying reality that the parties' dispute is, at its core, a *legal* one about whether the ADA and ANSI establish a duty of care that RPT owed to Mrs. Lettera. If they do, then the Letteras' failure to show the existence of a factual dispute would not suffice to warrant summary judgment in RPT's favor. To the contrary, the combination of such a legal result with the undisputed facts in the record would support a partial summary judgment of liability in favor of the plaintiffs. I therefore turn to the merits of the parties' legal dispute.

In opposing summary judgment, the Letteras describe "[o]ne genuine and material question of fact which [sic] exists in the case at bar and should serve to dispel any entitlement to summary judgment…." Opp. at 7. That factual dispute, as described by the Letteras, is "whether the subject matter ramp constitutes a defective condition which proximately caused the incident complained of herein thereby resulting in the severe and disabling injuries sustained by the plaintiff Lettera." *Id*. In addition, the Letteras appear to believe that there is a material

7

dispute of facts as to whether the defendant had notice of the condition of the ramp that it built. *See id*. at 10 ("defendants' [sic] claims that they had no notice of the dangerous, hazardous and trap-like condition existing on the subject matter premises … run contrary to the facts and circumstances had herein").

The argument entirely misses the point. The defendants are willing to concede, at least for purposes of summary judgment, that they built the ramp, that they knew of its condition – *i.e.*, its lack of guard rails and other accoutrements that the Letteras assert it should have had – and that the condition of the ramp was a proximate cause of Mrs. Lettera's fall. What they dispute is whether any jury having found such facts could lawfully render a verdict in the Letteras' favor. That dispute is purely a legal matter that can and should be resolved on a motion for summary judgment. Having reviewed the relevant authorities, I resolve the legal question in favor of the defendant.

1. <u>The ADA Does Not Establish A Duty Of Care</u>

The Letteras have brought a tort action based on an allegation of negligence that invokes this court's diversity jurisdiction. *See* Complaint ¶¶ 1, 19-21, 25. They have not sought to invoke the court's federal question jurisdiction to obtain a remedy under the ADA itself, nor would the latter statute permit them to do so. The question is thus not whether the Letteras have a private right of action under the ADA itself – they claim none – but rather whether, as a matter of law, the ADA established a standard of care for RPT in the construction and maintenance of the ramp in its parking lot, the violation of which would subject RPT to liability for any resulting injuries.

It was only in their sur-reply that the Letteras' belatedly acknowledged that they "may not rely on the [ADA] or other related sections in proving personal injury in a negligence action."

DE 30 at 1.  The pertinent case law demonstrates that, issues of timing aside, they were correct to do so:

> Turning ADA into a safety standard would, in effect, require building owners to refurbish buildings immediately or face potential tort liability to the disabled or persons associated with them for accidents occurring during their attempts to navigate steps into or out of a building, even though the steps may be perfectly proper and without defect.
>
> There is nothing in ADA, or in the interpretation of the statute by a New York court, that would suggest its draftsmen intended to depart from traditional negligence principles and impose a new statutory duty on building owners.  Nor has the New York State Legislature seen fit to expand the scope of a building owner's duty beyond that of the common law in this respect.

*Lugo v. St. Nicholas Assocs.*, 795 N.Y.S.2d 227 (App. Div. 2005) (citing *Wolfson v. Glass*, 754 N.Y.S.2d 82 (App. Div. 2003); *Murphy v. American Home Prods. Corp.*, 461 N.Y.S.2d 232 (1983)).  Thus, as they now concede, the Letteras cannot prevail on a theory that the ramp's condition violated the ADA.

          2.      <u>ANSI And Town Code Violations Are Insufficient To Support Liability</u>

The Letteras agree that, leaving aside the question of the ramp's compliance with the ADA or ANSI, the ramp at issue was "free of debris, liquids or any other foreign substance" and "was not cracked, broken, or otherwise damaged." Stmt. ¶¶ 3, 4.  In other words, the sole reason that the Letteras offer for Mrs. Lettera's fall is that the ramp's design prevented her from noticing it.  *See id.* ¶¶ 9, 10.  As RPT correctly notes, however, even if the ramp's design did violate relevant provisions of the Town Code, that fact alone cannot sustain a finding of liability.  Any such violation, without more, can only have "provided the occasion for [Mrs. Lettera's] accident, a fortuitous circumstance providing no legal connection between the alleged violations and the injuries [she] sustained …." *Warrick v. Capabilities, Inc.*, 750 N.Y.S.2d 662, 664 (App. Div.

2002) (citing *Morales v. City of New York*, 526 N.Y.S.2d 418 (1988); *Kenavan v. City of New York*, 700 N.Y.S.2d 69 (App. Div. 1999), *lv. denied*, 712 N.Y.S.2d 448 (2000)).

Stated another way, before the Letteras can ask RPT to take responsibility for Mrs. Lettera's fall, they must show that there was *something* – something attributable to RPT, that is – that prevented her from emulating the many other shoppers who *do* successfully manage to negotiate the hazards of the Walt Whitman Mall parking lot ramp. As far as I can discern from the record, they can make no such showing.

That being the case, there are no factual disputes for a jury to resolve. Even if, as the Letteras appear to argue, there is a dispute about the persuasiveness of the opinions of the parties' respective experts, *see* Opp. 7-9, that dispute is unquestionably immaterial. A jury resolving such a dispute in favor of the Letteras would nevertheless have a legal obligation to render a verdict against them. Accordingly, on the basis of the arguments in the parties' memoranda, I would be compelled to grant the motion for summary judgment. I therefore turn to the merits of the argument in the Letteras' sur-reply.

3. The Expert's Opinion Does Not Create A Dispute Of Material Facts

In their sur-reply letter, the Letteras attempt to support of the proposition that their own expert's belief that RPT should have conformed to ANSI standards suffices to create a genuine dispute of material facts that foreclosed the possibility of summary judgment. DE 30. In particular, they assert the existence of "well established case precedent" for the proposition that "such genuine issues of material fact regarding whether the difference in height between the level of the sidewalk and that of a handicapped parking ramp constituted a trap shall be sufficient to overcome summary judgment in a pedestrian's personal injury action." *Id*. at 1. The "well established case precedent" cited in support of that argument is, in its entirety, *Pagano v.*

*Rite-Aid Corp.*, 698 N.Y.S.2d 129 (App. Div. 1999). And the entire substance of *Pagano* is as follows:

> Supreme Court properly denied defendant's motion for summary judgment dismissing the complaint. Plaintiffs seek to recover damages for injuries allegedly sustained by Mary Lou Pagano (plaintiff) when she stepped from the sidewalk onto a handicapped parking ramp in front of defendant's store. Defendant failed to meet its initial burden of establishing as a matter of law that it did not create the allegedly dangerous condition or that the alleged defect was obvious and readily observable.... Defendant also failed to meet its initial burden of establishing as a matter of law that the area where plaintiff fell did not constitute a dangerous or defective condition. "Whether a particular height difference ... constitutes a dangerous or defective condition depends on the peculiar facts and circumstances of each case, including the width, depth, elevation, irregularity, and appearance of the defect as well as the time, place, and circumstances of the injury" .... Even a small difference in height is actionable if the alleged defect has the characteristics of a trap, snare or nuisance ....   In any event, we conclude that plaintiffs raised a triable issue of fact whether the alleged defect had the characteristics of a trap, snare or nuisance ....

698 N.Y.S.2d at 129 (citations omitted).

There are two rather serious flaws in the Letteras' sur-reply argument. First, the proposition that a dispute about "whether the difference in height between the level of the sidewalk and that of a handicapped parking ramp constituted a trap" can preclude summary judgment may be interesting in the abstract, but it has nothing to do with this case. The Letteras' expert has not cited such a factual issue in explaining Mrs. Lettera's fall. Instead, he attributes it entirely to RPT's "failure ... to comply with the ANSI specifications ...." Report at 4. The expert does not purport to link that failure to a height differential between the sidewalk and the ramp. *See id.* at 1-4.

Second, *Pagano* does not support, as it must for the Letteras' claims to survive the instant motion for summary judgment, the proposition that the standard for assessing the defendant's duty is amenable to definition by an expert's testimony (and therefore not amenable to

11

disposition on summary judgment). It certainly is not "well established controlling case precedent" for such a theory. *Pagano* has been cited by other courts only twice, and never in support of the legal proposition for which the Letteras now seek to rely on it. To the extent courts have cited *Pagano* at all, they have done so merely to endorse the unremarkable proposition that an expert's opinion as to what happened as a matter of fact can raise a triable issue of fact. *See Schaaf v. Pork Chop, Inc.*, 2005 WL 3514290, *1 (N.Y. App. Div. Dec. 22, 2005); *Kajfasz v. Wal-Mart Stores, Inc.*, 732 N.Y.S.2d 494, 495 (App. Div. 2001).

To the extent the courts have weighed in on the legal issue raised by the Letteras' attempt to resist summary judgment on the strength of their expert's opinion about what constitutes a duty of care, they have largely rejected the position the Letteras now advance. "Unlike foreseeability and causation, which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration." *Palka v. Servicemaster Management Servs.*, 611 N.Y.S.2d 817, 820 (1994) (citing *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 557 N.Y.S.2d 286, 289 (1990); *Waters v. New York City Hous. Auth.*, 513 N.Y.S.2d 356, 358 (1987); *De Angelis v. Lutheran Med. Ctr.*, 462 N.Y.S.2d 626, 627 (1983)); *see also Burke v. Warren County Sheriff's Dept.*, 890 F. Supp. 133, 138 (N.D.N.Y. 1995) (citing *Palka*, 611 N.Y.S.2d at 820).

The Letteras' theory, such as it is, ignores an important distinction between an expert opinion as to a factual matter and an opinion about a duty of care. Reasonable experts in engineering may disagree about the cause of an accident, and when they do there may be a genuine dispute of material facts that precludes summary judgment. But that is not the case

12

here. RPT is willing to assume for purposes of this motion that Mrs. Lettera's fall was in fact caused by the fact that the ramp's design did not comply with ANSI standards. What remains in dispute is whether those standards define the contours of RPT's duty of care to those who traverse its property. An engineer has nothing relevant to say on that matter; as the New York Court of Appeals has repeatedly made explicit, that question is a matter of law for a court to determine before submitting a case to a jury.

III.     Conclusion

For the reasons set forth above, pursuant to Rule 56 of the Federal Rules of Civil Procedure, I grant the motion of defendant The Retail Property Trust for summary judgment in its favor and against plaintiffs Iris and Frank Lettera. The Clerk is directed to enter judgment accordingly and thereafter to close the case.

**SO ORDERED.**

Dated:  Central Islip, New York
         January 24, 2006

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge